IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RICHARD GARCIA, on behalf of
himself and all others similarly situated,

               Plaintiff,

v.                                                                                       Civ. No. 04-832 JH/WDS

PRESBYTERIAN HEALTHCARE
SERVICES,

               Defendant.

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant *Presbyterian Healthcare Services' Motion to Dismiss* [Doc. No. 14]. The primary issue in this motion is whether Plaintiff Richard Garcia ("Garcia") has successfully stated a claim against Defendant Presbyterian Healthcare Services ("PHS") arising out of federal and state laws. After consideration of the law, the facts, and the arguments of the parties, the Court concludes that the motion should be granted as further explained below.

**STANDARD**

The court will dismiss a cause of action for failure to state a claim only when it appears beyond a doubt that plaintiff can prove no set of facts in support of the theory of recovery that would entitle him to relief, *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir. 1998), or when an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, *Maher*, 144

F.3d at 1304, and all reasonable inferences from those facts are viewed in favor of plaintiff, *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984). The issue in resolving a motion such as this is not whether plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

## **FACTS**

This case is one of dozens of similar cases filed in federal district courts around the nation. According to his Complaint, Garcia is a retired resident of Albuquerque, New Mexico who cannot afford health insurance. PHS is the largest health care organization in New Mexico, where it operates approximately eight hospitals. PHS is a tax-exempt, non-profit healthcare organization under the federal tax code, 26 U.S.C. § 501(c)(3). Plaintiff also alleges that PHS receives tax exemptions from state and local governments in accordance with New Mexico law.

On January 23, 2004, Garcia sought and received emergency medical care at Presbyterian Hospital in Albuquerque. Garcia does not allege that PHS provided him with negligent or inadequate medical treatment. However, Garcia does allege that PHS billed him $8,530.00 for those services, an amount that he claims far exceeded the actual cost of providing the treatment he received, and exceeded the amount the PHS would charge insurance companies for the same care. Garcia contends that PHS regularly inflates charges for uninsured patients while billing Medicare, Medicaid, and private insurers at a lower rate for the same services. He also claims that PHS improperly refused to provide him with medical treatment until he filled out forms and signed a contract promising to pay for charges incurred.

According to Garcia, this Court has subject matter jurisdiction because his claims "arise out

of a federal contract between Defendant [PHS] and the United States Government in which [PHS] agreed to provide mutually affordable medical care to its uninsured patients in exchange for a tax exempt status under 26 U.S.C. § 501(c)(3)."[1]  Garcia asks this Court to certify a class under Fed. R. Civ. P. 23 consisting of all uninsured persons who received any form of healthcare treatment at any PHS hospital from July 21, 1994 through the date of class notification.  Furthermore, Garcia has pled nine causes of action against PHS: (1) third party breach of contract, (2) breach of contract, (3) breach of duty of good faith and fair dealing, (4) breach of charitable trust, (5) violation of the New Mexico Unfair Practices Act ("NMUPA"), (6) violation of the federal Emergency Medical Treatment and Active Labor Act ("EMTALA"), (7) unjust enrichment/constructive trust, and (8) civil conspiracy.[2]  Garcia also asks for money damages as well as injunctive relief against PHS preventing them from continuing their current billing practices and requiring PHS, *inter alia*, "to provide mutually affordable medical care to the Plaintiff and the Class." Finally, Garcia asks the Court to impose a constructive trust on PHS's tax exempt savings and other revenues "in an amount sufficient to provide the Plaintiffs and the class mutually affordable medical care."

---

[1] The Complaint contains a claim arising under EMTALA, a federal statute, which in and of itself confers jurisdiction to this Court under 28 U.S.C. § 1331.  A reasonable reading of the Complaint reveals no challenge by Garcia to PHS's qualification for exempt status under 26 U.S.C. § 501(c)(3), a matter which may be heard only in the United States Tax Court, the United States Court of Claims, or the United States District Court for the District of Columbia.  Therefore, the Court rejects PHS's argument that this Court lacks subject matter jurisdiction over this case.

[2] Garcia also asserts a claim for "aiding and abetting," though it appears that he brings that claim against only Defendant American Hospital Association ("AHA").  However, on July 12, 2005, Garcia voluntarily dismissed all of his claims against AHA.

## DISCUSSION

### I. CLAIMS FOR BREACH OF CONTRACT AND BREACH OF CHARITABLE TRUST ARISING FROM FEDERAL LAW

The central premise of most of Plaintiff's Complaint is that when the federal government granted tax-exempt status to PHS under Section 501(c)(3) of the Internal Revenue Code, the two parties formed a contract requiring PHS to be organized and operated exclusively for charitable purposes. Garcia further contends that he and the other putative class members are third-party beneficiaries of this alleged contract who have the right to enforce it. This legal theory, though creative, is critically flawed and therefore all of Garcia's claims that flow from it will be dismissed.

First, the tax code does not create a binding contract between PHS and the federal government. Simply stated, one may not infer the existence of a government contract within a legislative enactment; rather, the government must explicitly state its intent to enter into a contract. "[A]bsent some clear indication that the legislature intended to bind itself contractually, the presumption is that 'a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.'" *Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 465-66 (1985) (quoting *Dodge v. Board of Ed. of City of Chicago*, 302 U.S. 74, 79 (1937)).

Garcia provides no authority to contravene this basic principle. Instead, he draws an analogy between the Internal Revenue Code and the Hill-Burton Act, which does create an enforceable contract between hospitals and the government. However, the distinctions between the two statutory schemes undermine the analogy to the point of irrelevance. The Hill-Burton Act provided direct

funds to subsidize private hospital construction, while Section 501(c)(3) merely provides tax exemptions. Further, in order to receive funds under the Hill-Burton Act, applicants were required to sign an express written contract, something that is absent here because the United States grants tax-exempt status to health care providers such as PHS with no such contractual agreement. *See Euresti v. Stenner*, 458 F.2d 1115, (10th Cir. 1972). In addition, the Hill-Burton Act provides for funds to organizations in return for their performance of specific, pre-negotiated acts and confers a private cause of action to enforce the Act. Further, the Secretary of Health and Human Services has promulgated regulations to define and enforce the obligations of recipients of funds under the Hill-Burton Act. In other words, that statute creates a mechanism to provide conditional government grants. In contrast, Section 501(c)(3) creates no direct contractual relationship, grants tax exemptions (not direct funding) to various types of organizations such as churches, schools, libraries, and charitable groups, yet imposes to specific affirmative obligations on those organizations. And as explained below, Section 501(c)(3) does not grant a private cause of action to third parties.

To the knowledge of this Court, no federal court has ever held that a grant of tax exemption under Section 501(c)(3) creates a contractual relationship. In fact, the authority interpreting the tax code is to the contrary. *See, e.g., McLaughlin v. C.I.R.*, 832 F.2d 986, 987 (7th Cir. 1987) (rejecting taxpayer's argument that the obligation to pay taxes is contractual, stating "[t]he notion that the federal income tax is contractual or otherwise consensual in nature ... has been repeatedly rejected by the courts."). In short, no contract exists here.

Second, even if a contract existed, 26 U.S.C. § 501(c) does not bestow a private right of action upon members of the public who wish to enforce its provisions. Rather, it provides an opportunity for a taxpayer that has been denied tax-exempt status to sue the IRS for judicial review

5

of an administrative decision, or for the IRS to sue tax-exempt organizations that no longer qualify for tax exempt status. *See* 26 U.S.C. § 7428. No provision of the Internal Revenue Code authorizes third parties to challenge determinations made under 501(c)(3) or to seek declaratory or injunctive relief under that section.

In addition, the Court may not imply the existence of a private right of action. In order to do so, the Court must find that Congress intended to create such a right. *See Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001). No such evidence exists here, because Section 501(c)(3) describes the class of organizations that may seek tax exempt status; it does not describe who may receive the benefits of such an organization's activities. Where the statute emphasizes "the person regulated rather than the individuals protected ... [there is] no implication of an intent to confer rights on a particular class of person." *Id.* at 289. (internal citation and quotation omitted).

Garcia's argument that the Court should find and enforce a charitable trust is also without merit. Uniformly, courts have ruled as a matter of law that (1) acceptance of a federal tax exemption pursuant to § 501(c)(3) creates neither a contractual relationship between the exempt organization and the United States nor a charitable trust for the benefit of the public and (2) even if such a contract or trust existed, § 501(c)(3) does not confer on alleged third party beneficiaries a private right to sue, and thus, such individuals have no standing to enforce the provisions of the statute. *See, e.g., Cygan v. Resurrection Med. Ctr.*, Case No. 04 C 4168 (N.D. Ill. July 27, 2005) (relying on *Watts v. Advocate Health Care Network*, Case No. 04 C 4062 (E.D. Ill. Mar. 30, 2005)); *Bobo v. Christus Health*, 227 F.R.D. 479 (E.D. Tex. Apr.26, 2005); *Amato v. UPMC*, 371 F.Supp.2d 752 (W.D. Pa. Apr.21, 2005); *Ellis v. Phoebe Putney Health Sys., Inc.*, Case No. 1:04-cv-80 (M.D. Ga. Apr. 8, 2005); *Corely v. John D. Archibald Mem. Hosp., Inc.*, Case No. 1:04-cv-110 (M.D. Ga. Mar. 31,

2005); *Watts*, Case No. 04 C 4062 (E.D. Ill.); *Kolari v. New York-Presbyterian Hosp.*, -- F.Supp.2d –, 2005 WL 710452 (S.D.N.Y. Mar.29, 2005); *Valencia v. Mississippi Baptist Med. Ctr., Inc*., 363 F.Supp.2d 867 (S.D. Miss. 2005); *Fields v. Banner Health*, Case No. CIV-04-1297 (D. Ariz. Mar. 23, 2005). The foregoing represents but a small sample of the decisions in which Courts have rejected arguments that are similar or identical to those Garcia advances here.

Having found that there is no basis on which to conclude that either a contractual relationship or a trust arising from federal law exists between Garcia, PHS, and the United States, the Court will dismiss with prejudice Counts I, II, III, IV, VII, VIII, and IX to the extent that they arise from federal law.

## II.     CLAIM ARISING FROM EMTALA

In Count VI of his Complaint, Garcia asserts a claim for violation of EMTALA, 42 U.S.C. § 1395dd. Garcia alleges that by requiring him to complete consent forms and to sign an agreement to pay for services, PHS delayed his medical treatment in violation of the statute. The EMTALA "places obligations of screening and stabilization upon hospitals and emergency rooms who receive patients suffering from emergency medical conditions." *Roberts v. Galen of Virginia, Inc.*, 525 U.S. 249, 250, 119 S.Ct. 685, 142 L.Ed.2d 648 (1999). The Eleventh Circuit has noted that the EMTALA was enacted to prevent hospitals from "patient dumping," the practice employed by "private hospital emergency rooms [to] refuse to treat indigent patients by transferring them to public hospitals or turning them away." *Holcomb v. Monahan*, 30 F.3d 116, 117 n. 2 (11th Cir. 1994). In addition to requiring emergency medical screening and stabilization, the Act prohibits "participating" hospitals from delaying the "provision of an appropriate medical screening ... or further medical examination and treatment ... in order to inquire about an individual's method of payment or

7

insurance status." 42 U.S.C. § 1395dd(h). The Act provides a private right of action for individuals who suffer "personal harm" resulting from a hospital's violation of the act. 42 U.S.C. § 1395dd(d)(2)(A).

PHS argues, and the Court agrees, that Garcia has failed to state a claim under EMTALA. Garcia alleges that by requiring him to sign an agreement to pay for services before giving him medical treatment, PHS caused him "economic injury and other damages." Garcia does not allege that he suffered any physical or emotional injury as a result of PHS's actions. As PHS correctly points out, the Tenth Circuit Court of Appeals has held that a hospital violates EMTALA by either failing to provide adequate medical screening of patients, or by failing to stabilize a patient's emergency medical condition of which the hospital is aware before discharging that person. *See Repp v. Anadarko Mun. Hosp.*, 43 F.3d 519, 522 (10th Cir. 1994). Garcia's Complaint contains no allegations to support either type of claim under EMTALA.

Furthermore, various federal courts have interpreted the provisions of EMTALA in light of factual allegations substantially identical to those in this case. Those courts have ruled that in the absence of allegations that a plaintiff was delayed in receiving proper emergency medical screening for the purpose of ascertaining his insurance status or ability to pay, and where there are no allegations of personal injury resulting from a defendant's violation of EMTALA but merely economic injury, there can be no relief. *See, e.g., Burton v. William Beaumont Hosp.*, 373 F.Supp.2d 707, 714-16 (E.D. Mich. 2005); *Jakubiec v. Sacred Heart Health Sys., Inc.*, 2005 WL 1261443 (N.D. Fla. May 27, 2005); *Amato*, 371 F.Supp.2d at 758-59; *Ellis*, Case No. 1:04-cv-80, p. 8-9 (M.D. Ga. Apr. 8, 2005); *Corely*, Case No. 1:04-cv-110, p. 9-10 (M.D. Ga. Mar. 31, 2005); *Watts*, Case No. 04 C 4062, p. 6 (E.D. Ill. Mar. 30, 2005); *Valencia*, 363 F.Supp.2d at 879-80; *Wright v. St. Dominic*

*Health Servs., Inc.*, 2005 WL 743339 at *3-4 (S.D. Miss. March 1, 2005); *Quinn v. BJC Health Sys.*, 364 F.Supp.2d 1046, 1053-54 (E.D. Mo. 2005); *Peterson v. Fairview Health Servs.*, 2005 WL 226168 at *8-9 (D. Minn. Feb. 1, 2005); *Kizzire v. Baptist Health Systems, Inc.*, 343 F.Supp.2d 1074, 1084 (N.D. Ala. 2004). Nowhere in the Complaint does Garcia allege that he was denied proper emergency screening or medical treatment, that his screening or treatment was delayed, that he received inadequate treatment at the hands of PHS, or that he suffered physical injury as a result of PHS's alleged violations of EMTALA. In these opinions, federal courts have already considered and rejected the arguments that Garcia puts forth in support of his EMTALA claim in this case. In light of the many well-reasoned opinions already rendered amidst this barrage of identical lawsuits, the Court finds it unnecessary to reinvent the wheel or to restate that which already has been so clearly articulated. Garcia's claim under Count VI will be dismissed with prejudice.

## III.    REMAINING STATE LAW CLAIMS

Having dismissed all claims on which the Court had original federal jurisdiction, the Court declines to exercise supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367(c)(3). *See Pruitt v. Comcast Cable Holdings, LLC*, 100 Fed. Appx. 713, 717, 2004 WL 1226935 (10th Cir. June 3, 2004) (unpublished decision) (holding that the district court's refusal to exercise supplemental jurisdiction over plaintiff's state law contract claims after dismissing all federal claims was "clearly authorized under 28 U.S.C. § 1367(c)(3)"). Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, [a] district court[] shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." A district court, however, "may decline to exercise supplemental jurisdiction

9

. . if[:]"

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The first and third provisions apply to this case. Plaintiff's Complaint raises novel questions about the interpretation of New Mexico law, and in some instances could be construed to argue for a change in state law. In addition, the Court has dismissed all claims on which it had original jurisdiction—the claims arising from Garcia's theory that a contract and a charitable trust were formed under 26 U.S.C. § 501(c)(3), as well as the EMTALA claim. The remaining claims arise from state law and should be dismissed without prejudice.

The Supreme Court and the Tenth Circuit have not only acknowledged such a result, they have encouraged it. In *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966), decided more than twenty years before Congress passed 28 U.S.C. § 1367, the Supreme Court addressed the federal district courts' ability to exercise jurisdiction over state law claims. In explaining that such power existed, the Supreme Court noted that it "need not be exercised in every case in which it is found to exist." *Id*. at 726. The Supreme Court continued:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*Id.* (footnotes omitted). *See Bd. of County Comm'rs of Sweetwater County v. Geringer*, 297 F.3d 1108, 1115 n.6 (10th Cir. 2002) ("[T]he district court's ruling [in which it declined to review the state law claims] comports with our general admonishment that district courts should dismiss state claims without prejudice after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial . . . .").

The dismissal of his state law claims without prejudice will not prejudice Plaintiff, because under 28 U.S.C. § 1367(d), he has 30 days in which to re-file his state law claims in state court.[3] As the Supreme Court explained: "To prevent the limitations period on such supplemental claims from expiring while the plaintiff was fruitlessly pursuing them in federal court, § 1367(d) provides a tolling rule that must be applied by state courts." *Jinks v. Richland County, South Carolina*, 538 U.S. 456, 459, 123 S.Ct. 1667 (2003). Accordingly, Plaintiff's claims under Counts I (third party breach of contract), II (breach of contract), III (breach of duty of good faith and fair dealing), IV (breach of charitable trust), V (violation of the New Mexico Unfair Practices Act), VII (unjust enrichment/constructive trust), VIII (civil conspiracy) and X (injunctive relief) insofar as they arise under state law will be dismissed without prejudice.

**IT IS THEREFORE ORDERED** that:

(1)  To the extent that they arise from federal law, Plaintiff's claims under Counts I (third party breach of contract), II (breach of contract), III (breach of duty of good faith and fair dealing), IV (breach of charitable trust), VII (unjust enrichment/constructive trust), VIII (civil

---

[3] 28 U.S.C. § 1367(d) provides: "The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."

(2)  conspiracy), and X (injunctive relief) are **DISMISSED WITH PREJUDICE**;

(2)  Plaintiff's claim under EMTALA is **DISMISSED WITH PREJUDICE**;

(3)  Insofar as they arise under state law, Plaintiff's claims under Counts I (third party breach of contract), II (breach of contract), III (breach of duty of good faith and fair dealing), IV (breach of charitable trust), V (violation of the New Mexico Unfair Practices Act), VII (unjust enrichment/constructive trust), VIII (civil conspiracy) and X (injunctive relief) are **DISMISSED WITHOUT PREJUDICE**.

_____
UNITED STATES DISTRICT JUDGE